# UNITED STATES DISTRICT COURT
for the
Eastern District of California

**FILED**
Jul 14, 2022
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America ) | |
| v. ) | Case No. 1:22-mj-00117-SAB |
| ) | |
| ETHAN ANDREW EVANS TINDUKASIRI, ) | |
| ) | |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of July 9, 2022 in the county of Mariposa in the Eastern District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, USC, Section 2241(a)(1) | Attempted Aggravated Sexual Abuse<br>-Any term of years in prison up to life in prison; a fine of up to $250,000, or both fine and imprisonment; supervised release of up to five years; $100 special assessment |
| Title 18, USC, Section 2244(b) | Abusive Sexual Contact<br>-Not more than two years imprisonment; a fine of up to $250,000, or both fine and imprisonment; supervised release of up to one year; $100 special assessment |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☒ Continued on the attached sheet.

*Complainant's signature*

Benjamin P. Zahn, Law Enforcement Ranger, National Park Service
*Printed name and title*

Complaint and affidavit submitted by email/pdf and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) on:

Date: **Jul 14, 2022**

*Judge's signature*

City and state: Fresno, California

Stanley A. Boone, U.S. Magistrate Judge
*Printed name and title*

PHILLIP A. TALBERT
United States Attorney
LAURA JEAN BERGER
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. |
|---|---|
| Plaintiff, | AFFIDAVIT IN SUPPORT OF AN ARREST WARRANT FOR ETHAN ANDREW EVANS TINDUKASIRI |
| v. | |
| ETHAN ANDREW EVANS TINDUKASIRI, | |
| Defendant. | |

### **AN APPLICATION FOR AN ARREST WARRANT**

I, Benjamin P. Zahn, being sworn, depose and state the following:

### **I.     INTRODUCTION AND AGENT BACKGROUND**

1.     This affidavit is in support of a complaint charging Ethan Andrew Evans TINDUKASIRI with a violation of Title 18, United States Code, Section 2241(a)(1), Attempted Aggravated Sexual Abuse by Force or Threat, and with a violation of Title 18, United States Code, Section 2244(b), Abusive Sexual Contact. The information set forth in this affidavit is not intended to detail every fact and circumstance of the investigation or all the information known to me and other law enforcement investigators. Rather, this affidavit serves only to establish probable cause for the arrest of TINDUKASIRI.

2.     Since 2009, I have been a Federal Law Enforcement Officer with the National Park Service (NPS), duly appointed under 54 U.S.C. § 102701. I am currently assigned to Manassas National

COMPLAINT AFFIDAVIT                                                                                   1

Battlefield Park. There, I am charged with oversight and operation of the law enforcement program as the Senior Law Enforcement Officer (Chief Park Ranger). I attended the Municipal Police Training in Plymouth, MA in 2007 with the Yarmouth, Massachusetts Police Department. In Glynco, GA, I attended both the Land Management Police Training in 2013 and the Investigator Training Program in 2015. Prior to my current assignment, I was assigned to the Investigative Unit at Golden Gate Recreation Area in San Francisco, California. I have participated in numerous investigations involving violations of Titles 16, 18, and 21 of the United States Code during which I executed federal search and arrest warrants, reviewed, and analyzed recorded conversations, and debriefed witnesses, including victims of sexual abuse. During these trainings and investigations, I have become familiar with the territorial boundaries and jurisdictional status of many National Parks, including Yosemite National Park's federal exclusive Special Maritime and Territorial Jurisdiction as defined in 18 U.S. Code § 7(3).

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses including body camera footage review of contact by agents and officers with victims and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested arrest warrant for TINDUKASIRI and does not set forth all my knowledge about this matter.

## II. PROBABLE CAUSE

### A. Initial Reports Regarding and Contact with "Ethan"

4. On July 9th, 2022, at approximately 03:30 P.M., United States Park Rangers (USPRs) Cody Hays and Christian Del Pozzo of Yosemite National Park received a call over the radio from the Yosemite Emergency Communication Center regarding a welfare check for an individual named "Ethan" who was reported to be harassing residents of the Yosemite Valley Huff Housing area and other park visitors. The individual was reported to be inappropriately touching people without consent, made several lewd comments, and statements involving suicide. The incident occurred in the Huff Housing Area which is within the legislative boundaries of Yosemite National Park an area of exclusive jurisdiction and within the Special Maritime and Territorial Jurisdiction of the United States.

5. Upon responding to the Huff Housing area, USPR Hays and USPR Del Pozzo were met

by several area residents who described "Ethan" making lewd comments, touching people without consent, and was near the Merced River, within Yosemite Valley.

6. USPR Hays and USPR Del Pozzo searched the area described by the residents by the river and spoke to a friend of "Ethan". USPR Hays and USPR Del Pozzo observed a naked man across the river approximately one hundred (100) yards away walking up to a group of adults, including multiple dogs and children. The friend identified the naked man as "Ethan". It appeared that "Ethan" and an adult male were having a verbal confrontation. "Ethan" began to walk away and cross the river away from the male and the associated group.

7. USPR Hays and USPR Del Pozzo quickly made their way along the river to contact the person matching the description of "Ethan". USPR Hays asked if he was "Ethan". He confirmed he was "Ethan" by providing his name and date of birth as Ethan Andrew Evans Tindukasiri (hereinafter referred to as TINDUKASIRI) which was later validated with California Department of Motor Vehicle records.

**B.  TINDUKASIRI's Behavior and Allegations of Victim/Witnesses**

8. USPR Del Pozzo informed TINDUKASIRI why he was being contacted by Law Enforcement. As USPR Del Pozzo was explained the reason for their conversation, TINDUKASIRI stated "I can barely understand, honestly". USPR Del Pozzo repeated his statement to him and asked him "You can barely understand?" and he replied by saying "Yeah". He then stated, "I can't understand Spanish". USPR Del Pozzo advised him that he was speaking English, and TINDUKSIRI replied by saying "Really, ok". As USPR Del Pozzo was speaking to him, he spontaneously turned to USPR Hays and referred to him as "Jared". He admitted that he had drank alcohol today, smoked marijuana, and drank bong water. He admitted to recently using acid "a few days ago." During USPR Hays and USPR Del Pozzo's contact with TINDUKASIRI, he removed his penis from his shorts and began to urinate. He refused to comply with orders to not urinate in public.

9. TINDUKASIRI told USPR Del Pozzo that he had stopped taking his prescribed medications, "Trazadone, Zyprexa, and Depakote"[1] upon his arrival to Yosemite. TINDUKASIRI

---

[1] These medications are generally known to be associated with the treatment of schizophrenia

admitted to Rangers that he had smoked "weed", consumed LSD, and drank alcohol throughout the prior three days. As USPR Del Pozzo spoke to TINDUKASIRI, he would answer questions related to the day's events cogently then transition to unrelated, sometimes sexual topics saying, "You've got a half-chub, don't you?" and asking to "shoot" one of the Ranger's guns.  However, TINDUKASIRI was able to recount to USPR Del Pozzo where he worked, when he last worked, his cabin number, and where his wallet was.  He was also able to spell his name one letter at a time so that USPR Del Pozzo could record it correctly.

10. After observing his behavior for about a half-hour, USPR Del Pozzo arrested him for being under the influence in violation of Title 36, Code of Federal Regulations, Section 2.35(c), present in a park area while under the influence of alcohol or a controlled substance to a degree that may endanger oneself or another person, or damage property or park resources.

C. **Investigation Regarding Possible Sexual Assaults**

11. While USPR Hays and USPR Del Pozzo were searching for and made contact with TINDUKASIRI along the beaches of the Merced River, USPR Davis and USPR Fey walked along the river to anyone who may have seen or had knowledge of TINDUKASIRI.  USPR Fey contacted a man who was wading in the river and a woman who was sunbathing on a log in the river, N.D.  N.D. agreed to exit the river and speak with officers.

12. N.D. stated that on July 5, 2022, she and her friend M.V. came to visit their friend, Ethan TINDUKASIRI, at Yosemite National Park.  TINDUKASIRI was starting employment that day working for Aramark, the contracted concessions company operating with Yosemite National Park.  Both M.V. and N.D. had known TINDUKASIRI for approximately four years. M.V. had previously been in a romantic relationship with him "a long time ago" and had not seen him in about two years.  N.D. came to Yosemite to make sure TINDUKASIRI was "OK" starting his new job working for Aramark concession company.  M.V. and N.D. traveled from southern California. M.V. joined N.D. in speaking with officers.

13. When M.V. and N.D. arrived at Yosemite, they met up with TINDUKASIRI and began a

---

and bipolar disorders.

stay with him at the employee housing area, "Huff Housing." Huff Housing and the surrounding area around the Merced River are within the legislative boundaries of Yosemite National Park, an area of exclusive jurisdiction and within the Special Maritime and Territorial Jurisdiction of the United States. Huff Housing is made up of large wall tents shared by employees of Aramark. TINDUKASIRI shared a tent with two roommates. For the first couple of nights of the visit, M.V. and N.D. slept in the large wall tent.

14. Over the course of the next four days, TINDUKASIRI's sexual advances and unwanted physical contact became progressively more aggressive and explicit. M.V. stated that TINDUKASIRI made forcible sexual advances upon she and N.D. "multiple times- I can't even count on my fingers." N.D. stated TINDUKASIRI had "been getting sexually aroused around us for the whole time we've been here, both of us… he constantly has an erection around us..." Each time TINDUKASIRI made physical contact with both N.D. and M.V. they directly told him "No" over and over. They continually set boundaries and told him when he was actively transgressing them. Both N.D. and M.V. were upset and worried in part as these physically aggressive and sexually assaultive behaviors were something they had not seen with TINDUKASIRI before this trip to Yosemite.

15. Both M.V. and N.D. knew that TINDUKASIRI had been previously diagnosed with mental health conditions and were aware that he was taking prescription medication related to that. They became concerned on July 7, 2022, when, according to M.V., "things started getting weird." They saw TINDUKASIRI ingest three tabs of what they believed to be LSD and drink alcohol given to him by other people in Huff Housing. They both tried to intercede and tell those providing TINDUKASIRI with LSD that he should not be given illicit drugs because of his psychiatric diagnosis and related medications. However, their efforts were not successful and they saw TINDUKASIRI ingest LSD and drink alcohol. That evening, TINDUKASIRI made increasingly sexually explicit comments to M.V. and N.D., including telling M.V. "I miss going inside you." Despite these comments and behaviors, M.V. and N.D. spent the night of July 7 in TINDUKASIRI's tent. TINDUKASIRI and his two roommates also spent the night in the tent.

16. On July 8, 2022, N.D. and M.V. became progressively more concerned about

TINDUKASIRI's behaviors and statements. In the morning, as they practiced yoga on the nearby Merced River's edge TINDUKASIRI touched his genitals as he stared at M.V. and N.D. TINDUKASIRI's tent-mate, Reginald Thompson, saw TINDUKASIRI's behavior, and verbally confronted him.

17. By the end of the day on July 8, 2022, M.V. and N.D. felt they were not safe to sleep in the tent near TINDUKASIRI, even though they had not seen TINDUKASIRI since earlier in the day near the river. Because N.D. had seen TINDUKASIRI persistently "hitting on" M.V. since they got to Yosemite, N.D. stayed in another friend's van while M.V. went to sleep in her own car. Later, while M.V. was trying to sleep in her car TINDUKASIRI got into the car with her and stated, "I want to fall asleep with you." He was so unrelenting it took M.V. 30 minutes to push TINDUKASIRI out of the car. Once she got him out, she immediately locked the doors.

18. The next morning, July 9, 2022, M.V. and N.D.'s yoga practice was again interrupted by TINDUKASIRI. He touched M.V. sexually on the skin of her breasts and buttocks, against her immediate verbal objections. TINDUKASIRI was fully naked and both M.V. and N.D. saw that his penis was erect as he watched them do yoga. N.D. was also naked, but M.V. was clothed. Shortly after, N.D. was lying naked facedown by the river. TINDUKASIRI who was still naked, approached her, got on her back, and sat on her as she lay face-down on the sand. N.D. consented to TINDUKASIRI providing her a backrub. However, TINDUKASIRI began rubbing his penis on her and attempted to put his penis in her vagina.

19. N.D. described TINDUKASIRI's actions as TINDUKASIRI having "almost literally stuck his dick inside" her. TINDUKASIRI's penis made direct contact with her vagina during this time. And he, without consent, rubbed his penis on her and attempted to put it in her vagina. N.D. added, "I did not say 'OK' for him to, like, rub his dick on me."

20. Throughout the day on July 9, 2022, TINDUKASIRI continued to solicit sex from them and touched them without their permission. He also attempted to "choke" N.D. multiple times in a way she believed was meant to be sexually arousing to him. Then, in the early afternoon, after completion of the yoga session at the beach, while N.D. carried books to the friend's van where she had slept,

| | |
|---|---|
| 1 | TINDUKASIRI followed her and pinned her down inside the van.  He held her arms down to physically |
| 2 | restrain her. He raised his fist and tried to slap her, spit on her, and tried to gain access under her dress. |
| 3 | She repeatedly yelled "NO! NO! NO!" and "Get off me!" and "Get off!" It took all her strength to get |
| 4 | free of him. N.D. further described the contact by stating that TINDUKASIRI "went for it" and "pushed |
| 5 | himself on me."  She stated TINDUKASIRI "lifted my dress up and tried to stick it in,[2] in a way," and |
| 6 | that he "wouldn't get off."  N.D. also stated TINDUKASIRI attempted to kiss her.  N.D. stated that she |
| 7 | and TINDUKASIRI had kissed in the past, including during the current trip to Yosemite.  However, |
| 8 | N.D. was adamant that she clearly told TINDUKASIRI that she did not consent to his actions toward her |
| 9 | in the van. |

### III.  CONCLUSION

17.  The above facts set forth probable cause to believe that Ethan Andrew Evans TINDUKASIRI is in violation of Title 18, United States Code, Section 2241(a)(1), attempted aggravated sexual abuse by force or threat, and Title 18, United States Code, Section 2244(b), abusive sexual contact. I request that an arrest warrant be issued for TINDUKASIRI for these violations.

18.  I declare under penalty of perjury the information which I have set forth above is true to the best of my knowledge.

BENJAMIN P. ZAHN
Law Enforcement Park Ranger
National Park Service

Affidavit submitted to me by email/pdf and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1, 4(d), and 41(d)(3) this __14th__ day of July, 2022.

STANLEY A. BOONE
United States Magistrate Judge

Reviewed as to form by:

---

[2] N.D. initially stated that TINDUKASIRI was wearing shorts and did not have his penis exposed during this incident.  However, upon further questioning, she stated she could not recall at that time whether his penis was "out."

COMPLAINT AFFIDAVIT                                                                 7

1 /s/ *Laura Jean Berger*
  LAURA JEAN BERGER
2 Assistant U.S. Attorney